DINSMORE *vs.* WESTCOTT and others.

1. The warrant for sale of land for taxes, under the act "to make taxes a lien on real estate, and to authorize sales for the payment of the same," (*Nix. Dig.* 947,) must be issued to a constable of the township. There is no authority for issuing it to the collector of taxes.

2. A deed made by a collector, under a sale in pursuance of a warrant issued to him under that act, held void.

On petition for writ of assistance.

*Mr. R. Wayne Parker* and *Mr. Cortlandt Parker,* for petitioner.

*Mr. B. Williamson,* for Mrs. Sweet.

THE CHANCELLOR.

The petitioner, Edward Kemp, was the purchaser, at sheriff's sale under the execution in this cause, of the mortgaged premises. He has made due demand of possession upon Stephen Sweet and his wife, who are the persons in possession, exhibiting to them his deed from the sheriff, and they have refused to comply with his demand. Due notice of this application has been given to both Sweet and his wife. Sweet was not a party to the suit for foreclosure, although he claims

to have had an equity of redemption in the mortgaged premises, under a deed of conveyance, from Anthony W. Dimock and wife, for the property. Mrs. Dimock claimed title at the time of the conveyance to Sweet, under a deed from Abraham H. Schenck to her. Neither the deed to Mrs. Dimock, nor the deed to Sweet, was recorded when the bill was filed. Sweet and his wife were, therefore, under the act of 1870, (*Pamph. L.*, 1870, *p.* 40,) bound by the proceedings, and were foreclosed by the final decree. Sweet offers no defence to this application. His wife, however, claims ownership of the premises, by title paramount to that of complainant, under which the the sheriff's sale was made. The evidence discloses the fact that Sweet, in July or August, 1873, (the final decree in this cause was entered on the eleventh of September, in that year,) applied to the collector of taxes of the township in which the land lies, and requested him to cause the property to be sold for unpaid taxes assessed against Dimock in 1872, and taxes assessed against Joseph D. Higgins, a former owner of the property, in 1871. It appears by the deed from Dimock and wife to Sweet, which is dated May 1st, 1873, that the property was conveyed to the latter, subject to mortgages for $22,500, thereon, and the interest on those mortgages, and the taxes on the property, not exceeding, for interest and taxes, $1100. The taxes, for which he desired to cause the property to be sold, were in all $430.40, besides interest and fees. The tax against Higgins was $201.40, and that assessed against Dimock was $229. The collector consented to cause the property to be sold. At Sweet's request, he published the advertisement of sale in a newspaper published in Perth Amboy, instead of a newspaper in the city of New Brunswick, in which he usually advertised such sales. Sweet gave as his reason for publishing in the Perth Amboy newspaper, (the property is situated in the township of Piscataway, in Middlesex county,) that a "bogus" mortgage had been given by Schenck upon the property, to a man who, at the time of giving it, lived in New Brunswick, but had since gone to South America, and he did not wish the owners of it

to find the advertisement. He said he was willing to pay the collector for his extra trouble in publishing in Perth Amboy. He arranged with the collector for the day of sale, and that the sale should take place on the premises. He told the collector he would have a man at the sale to attend to the sale for him. On the day of sale he had a person there, whom he introduced to the collector as a friend of his, from Philadelphia—a Mr. Casselbury. The collector had requested two persons to attend the sale as bidders, and expected them to be present, and so told Sweet, but the latter, he says, told him to hurry the sale, and he accordingly put up the property a little after two o'clock in the afternoon, and struck it off to Casselbury, for the term of fifty years. A little while afterwards, he says, the persons whom he was expecting arrived. The collector says that the only persons present at the sale were Sweet, Sweet's son and Casselbury, and perhaps Sweet's hired man. It appears, also, that after the sale, which took place on the 10th of October, 1873, Sweet claimed to be the owner of the property under this tax title. It is also in evidence, that when the demand for possession was made, Sweet's son, in the presence of Mrs. Sweet, said that his father had a tax title for the property, and Mrs. Sweet requested him "to be still," saying, he "might injure his father by talking." On that occasion Mrs. Sweet made no claim to the property, but said, in answer to the demand for possession, that the whole affair was the business of her husband, and that she knew nothing about it. The deed to Casselbury bears date October 30th, 1873. Mrs. Sweet now claims that she has had possession of the property since the 3d of March, 1874, under a deed from Casselbury and wife to her, of that date. It is manifest that this sale to Casselbury was a mere contrivance to enable Sweet to keep possession.

The deed to Casselbury was made by the collector, in pursuance of a warrant issued to him by the township committee, on the 6th of August, 1873. The second section of the act " to make taxes a lien on real estate, and to authorize sales

for the payment of the same," approved March 17th, 1854, (*Nix. Dig.* 947,) provides, that any assessment of taxes made in this state, against any person or persons residing out of this state, or " foreign corporations residing out of the county in which the land is located," on account of any lands, tenements, hereditaments, or real estate of such person or persons, or corporation, shall be and remain a lien on all the lands, tenements, or real estate, on account of which the assessment shall be made, with lawful interest thereon accruing, and all costs and fees in relation to said assessment and collection thereof, for the space of two years from the time when the taxes so as aforesaid assessed were payable. The third section directs that in case any assessment of taxes, as specified in the second section, together with the interest thereon and the costs, shall remain unpaid for the space of one year after they were payable, then, and in any such case, it shall be lawful for the township committee, or a majority of them, to issue their warrant, under their respective hands and seals, directed to any constable of the township, therein and thereby commanding him to make said taxes, with the interest and costs and fees, of the lands, tenements, hereditaments, or real estate on account whereof the same were assessed, by selling the same, or any part thereof, as will be sufficient for the purpose, for the shortest time for which any person or persons will agree to take the same and pay the taxes, with interest, and all costs, fees, charges, and expenses, &c. By a supplement to that act, approved March 25th, 1863, (*Pamph. L.*, 1863, *p.* 497,) it is provided that the lien and liability to sale are extended to the lands, tenements, hereditaments, and real estate of all persons and corporations. That supplement authorizes the township committee to proceed to the collection by warrant, according to the original act, after the tax shall have remained unpaid for four months. By a further supplement, approved March 26th, 1873, (*Pamph. L.*, 1873, *p.* 63,) it is provided that the real estate of any person or persons residing in this state, or any corporation of this state, may be sold for taxes in the same manner as real estate of persons residing out of this state, or foreign corporations located outside of the county

in which the land is located, was then sold for taxes. The supplement of 1863 had, however, already made such provision ; and that act appears to have been unrepealed. It will be seen that, by the terms of the original act, the warrant is to be directed to a constable of the township. There is no authority, under any of these acts, for directing the warrant to any one else. The twenty-ninth section of the "supplement to the act concerning taxes," approved April 11th, 1866, (*Nix. Dig.* 951,) is relied upon as authority for directing the warrant to the collector ; but that section refers only, by its terms, to warrants issued for the collection of delinquent taxes, by virtue of "the act concerning taxes," and cannot be held to refer to the act above quoted. Its language is : "The warrants hereafter issued for the collection of delinquent taxes in the townships, boroughs, cities, districts, or wards of this state, *by virtue of the act to which this is a further supplement,* shall be directed and delivered to the collector of the township, borough, city, district, or ward ; and the said collector shall, in the execution of said warrant, have the same powers, and perform the same duties, be subject to the same forfeitures, and receive the same compensation, as is prescribed to the constables by the provisions of the *aforementioned act ; provided,* that this section shall not apply to any city, borough, township, town, or district having special provision inconsistent herewith." The limitation of the charge provided for in this section, to proceedings for collection of delinquent taxes under the "act concerning taxes," is the more clear from the language of the tenth section, which directs the assessor, in all cases where real estate is taxed to any person from whom he has reason to suppose it may be difficult to collect the tax by warrant against his goods, chattels, and person, to add to his duplicate, by way of appendix, or otherwise, a designation of the real estate, by such short description as will be sufficient to ascertain the location and extent thereof, to the end that the tax "may be collected in the manner prescribed by the act entitled 'an act to make taxes a lien on real estate, and to authorize sales for the payment of the same, approved March 17th, 1854.'" The warrant, therefore, was a nullity, and

the deed to Casselbury conveyed no title. *Carron* v. *Martin,* 2 *Dutcher* 594. It may be added, that the views expressed by this court, (by Chancellor Green) in *Hopper* v. *Executors of Malleson,* 1 *C. E. Green* 382, are fatal to this defence, if the deed were valid. The special law under consideration in that case, was identical in its terms as to the estate to be acquired by the purchaser, with the general act making taxes a lien on real estate. It was there held that a deed under a sale for tax by virtue of that special act, while it conveyed the estate of the owner against whom the tax was assessed, and all persons claiming under him, until the end of the term, was of no effect against the holder of a mortgage existing on the premises at the time of the assessment. The complainant's mortgage for $7000, in the present case, was given in the year 1868, and the mortgage by Higgins to Westcott, in 1870.

The prayer of the petition will be granted.